# INTERNATIONAL BROTHERHOOD OF TEAMSTERS



October 27, 2016

**Via Email and Certified Mail: 7014 1200 0000 0960 1786**
Robert Boja
Vice-President
Flight Operations
ABX Air, Inc.
145 Hunter Drive
Wilmington, Ohio 45177

Dear Bob,

In furtherance of our discussion last week please be advised that Local 1224 expects the Company to honor the terms of the Collective Bargaining Agreement ("CBA") and past grievance settlements.

First, with respect to "D 6 Days," as you recall, a dispute arose between the Company and the Union regarding the Company's interference with the Crewmembers' rights to exercise their options regarding such days. Through a mediated Settlement Agreement, the Company agreed that it would not unilaterally pay Crewmembers in lieu of restoring D 6 Days Off and that it would meet its obligations as set forth in Article 13 M. In earlier discussions, the Union had agreed that Crewmembers would provide a minimum of twenty-four hours' notice of the Work Day(s) that he or she was dropping to restore their Days Off.

Furthermore, during grievance settlement discussions Dave Forsyth requested that Crewmembers notify Crew Planning for any restoration days due during the adjustment period and included a statement to that effect on the front page of the bid package. In accordance with the parties' settlement agreements, Crewmembers have provided the requisite notification and have afforded the Company notice several days in advance.

It has come to the Union's attention that Crewmembers are now being told by management that the Company will not "allow" Crewmembers to take their D 6 Days until after the Open Flying is completed. This new D 6 Day requirement imposed by the Company is wholly inappropriate and its unilateral imposition of that condition is in no way contemplated by, nor arguably justified by the CBA or the parties' settlement agreements regarding D 6 Days. There is nothing in the CBA that conditions the observance of a D 6 Day on being approved and released by the Company.

Under the terms of the CBA, Crew Scheduling is required to drop Work Days to restore Days Off in the bid period in which the Crewmember earned the D 6 Days, provided there are enough Work Days remaining to restore the Days Off. In the event, there are not enough Work Days in that bid period, the Crewmember selects the Work Days he wishes to drop to restore his Days Off in the following bid period.

---

**Airline Professionals Association | Teamsters Local Union No. 1224**
2754 Old State Route 73, Wilmington, OH 45177 | ph: 937.383.2500 | fx: 937.383.0902 | www.apa1224.org
*Affiliated with the International Brotherhood of Teamsters*

**EXHIBIT B**

There is no "approval" process involved nor is there any requirement that the Days Off be mutually agreed upon between the Company and the Crewmember. These are Days Off that the Crewmember earned and is entitled to take solely as he or she determines.

Second, with respect to vacation bids, as you know, several Crewmembers were required to drop their vacation periods when they began Captain upgrade training. Section 10 G 5 is clear that the Chief Pilot will ensure that a sufficient number of vacation weeks are available for Crewmembers who are entitled to vacation weeks under the circumstances described above. This issue came up a few years ago and was resolved at the initial step of the grievance procedure. I do not understand why this is an issue again. To be clear, these are vacation weeks that the Crewmembers earned and are entitled to have. They do not want to be paid in lieu of their vacation periods. They want the time off.

Third, it has come to my attention that the Company intends to pay the affected Crewmembers in lieu of their vacation days. The Company does not have the unilateral right to do that, and the CBA does not provide it with any arguable justification to do so. Just as there is no provision in the CBA that permits the Company to unilaterally determine which Work Days will be dropped for purposes of restoring Crewmembers' Days Off, there is no provision in the CBA that permits the Company to unilaterally cancel or withhold Crewmembers' vacations or to pay Crewmembers the value of their vacation days in lieu of the Crewmember taking his or her earned vacation.

Finally, it has also come to my attention that the Company is building schedules that violate the Day/Night transition restrictions contained in Section 13 D 1. As I understand it, the Company has sought the Union's approval to waive those provisions with respect to specific flights. I also understand that during the course of those discussions, the Union was willing to grant a waiver if the Company provided catering on the affected flights and provided further that adequate rest was included in the schedule. The Company has rejected the Union's proposal. Having done so, the Company must adhere to the terms and restrictions contained in Article 13 D 1. Please comply with the terms of the CBA, therefore, and refrain from building schedules that violate the Day/Night transition restrictions.

The Company has an affirmative obligation to maintain the status quo during negotiations under section 6 of the Railway Labor Act. As set forth above, the Company is in violation of its obligations. Local 1224 demands that the Company cease and desist from implementing unilateral changes to the CBA.

Regards,

Lynne M. Nowel
Attorney at Law
Representing APA Teamsters Local 1224