

November 20, 2016

Richard Ziebarth
Teamsters APA Local 1224
2754 Old State Route 73
Wilmington, Ohio 45177

Dear Rick,

Thank you for calling yesterday to explain the Union's position regarding what you allege are status quo violations. More specifically, we discussed the issues initially raised in Lynne Nowel's letter from October 27, 2016 surrounding vacations, day night transitions, and awarding D6 days. Because you weren't involved in the meeting we had with the representative you and Local 1224 sent to Washington, D.C. on Friday, November 18, I want to address those points in this letter to you.

With respect to vacation, the Union's allegation was that ABX is required to ensure that sufficient vacation weeks are available so that recently upgraded captains, whose awarded vacation periods were canceled when they entered upgrade training, would have replacement vacation weeks. Although we disagree with the Union's position, we told your representatives in Washington that we would do that both orally and in writing. Everyone on your side of the table seemed satisfied that commitment resolved that issue. And, indeed, we will ensure that the appropriate number of vacation periods are opened, and that the upgraded captains are aware of the available weeks. We will start the process on Monday, unless we are contacted earlier by the applicable crewmembers.

During our discussion of day/night transitions, your Scheduling Committee member, John Niewenhous, agreed that the pairings that were constructed during the summer with R4 assignments added to the lines were contractually compliant. He professed to be unaware of the construction of the lines that were put out for bid for October and November; and neither he nor any of your other representatives were able to identify any lines or trips that were not compliant with the CBA's day/night transition requirements, other than the Rockford trip that Amazon recently gave to us. We acknowledged that, even with the addition of R4 assignments, that trip cannot be made to be contractually compliant. We therefore told your committee that, in the absence of relief, we would inform the customer that we cannot perform that flying.

In order to preserve that flying, both sets of representatives agreed on Friday to exchange proposals for an agreement that would allow the Company to perform these trips – including but not limited to Rockford – without the use of R4 days to cure the day/night transition issue. In exchange for the Union's waiver of the day/night issue, ABX would provide hotel rooms and catering under certain agreed-upon circumstances. Indeed the template was the Union's proposal that had been offered some months before. During our meeting, the offer was made, and accepted, that when an agreement was reached its duration would match that of our CBA, rather than be terminable with 30 days notice.

**EXHIBIT C**

I understood you to say, when we talked yesterday, that despite our extensive discussions on Friday about day/night transitions with the committee you and the Local sent to Washington, that those representatives (including the president of Local 1224) lacked authority to have those very discussions.  I am unsure how you are able to limit the authority of the president of the Local; but be that as it may, if you and the Local are withdrawing the offer to negotiate the waiver agreement ABX will continue to build trips using R4 assignments (that your Scheduling Committee member agreed were legal), and will take immediate steps to terminate the Rockford trip.  It may take as long as December 1 for us to shed the Rockford flying but it is not our intent to continue to perform flying that does not comply with the CBA.

With respect to D6 Days, there are two issues.  The first was the Union's demand that Flight Crew Letter 16-85, from October 28, 2016 be withdrawn.  We told your representative we would do that.  The new flight crew letter rescinding FCL 16-85 will be posted on Monday.

The second issue relates to the timing of when crewmembers would receive confirmation from ABX that the work day they selected to drop indeed was being dropped.  Your representatives on Friday acknowledged that, historically, there has always been positive communication regarding the crewmember's selection of a day off, and the Company's acknowledgement, to ensure that everyone is aware of the need to reassign a crewmember to the dropped trip.  We have a disagreement regarding when that request from the crewmember and confirmation from the Company can or must be handled.  But, in the absence of any contractual language specifying when the crewmember makes his request and when the Company responds, and in view of the changed circumstances we presently face, that is plainly a minor dispute subject to arbitration.  We are prepared to take that dispute to expedited arbitration.

Finally, your representatives alleged – for the first time – that ABX is not allowed to junior assign a crewmember on a work day that was dropped from his scheduled as a result of a D6 day.  The CBA expressly states that such a day is not an "inviolate day." That means a crewmember can be junior manned on that day and there is no plausible argument to the contrary.

After concluding our meeting Friday I thought we had corrected the concerns you and Lynne raised regarding all the perceived status quo issues, except the notice issue regarding D6 days, which is plainly a minor dispute. As to the vacation language, and although I believe the language in Article 10.G.5. conflicts with E.11., out of an abundance of cooperation we agreed to open weeks of vacation to accommodate your claims.  I believe that issue is fixed and a non-issue at this point. Your claims related to the day/night transitions seem fairly straightforward as well. We can continue the practice of tagging R4 assignments onto trips which makes them compliant with the CBA and then notify our customer Rockford cannot be flown any longer.  I think it's in your members best interest to fly RFD and fix the other day/night issues through an agreed to waiver as suggested by your committee, but that is your decision, not mine.  D6 days, to

date, have not, to my knowledge, been denied to anyone, and D6 days are specifically identified as not inviolate days in the CBA.

Despite your call to me demanding that the status quo be adhered to before we can discuss a way to help the Company, we believe that the actions described above should relieve your concerns on that count. We intend to grant every crewmember's D6 day request; the only open issue, as I see it, is when the communications about the request and the Company's confirmation take place, which is a minor dispute. To reiterate, we will do the following out of an abundance of cooperation.

- Vacation weeks will be opened to accommodate the upgrading Captains
- We will continue the legal application of assigning R4 to lines of time that are not day/night compliant in order to make them compliant. We will notify the customer of not being able to accommodate RFD. If you want to continue discussing the day/night waiver discussed on Friday please let me know.
- The D6 application is completely within the CBA language and stable as a practice prior to and subsequent to Judge Black's decision. No crewmember's D6 Day request has been denied and we are clearly allowed to junior assign on days off created by D6 Days. Indeed, what we agreed to do on Friday is closer to the Union's position than what the parties agreed to adhere to as the "status quo" during discussions with Judge Black.

Rick I can only assume some disconnect of information from the conclusion of our Friday meeting and your call on Saturday. As offered Saturday I leave the communication lines open to John and myself to keep the airline operating and avoid any labor disruptions.

Sincerely,

Robert N. Boja
Vice President, Flight Operations
ABX Air, Inc.