IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| ABX AIR, INC., | |
|     Plaintiff, | |
| v. | CASE NO. 1:16-CV-1096 |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION, et al., | JUDGE BLACK |
|     Defendants. | |

### DECLARATION OF RICHARD ZIEBARTH

The following declaration is made pursuant to 28 U.S.C. § 1746:

I, RICHARD ZIEBARTH, declare that I am over the age of 18 years; I have personal knowledge of the following facts; and, that I can testify to these facts if called upon to do so.

1.  I am employed by ABX Air, Inc., (ABX" or "the Company") as a Boeing 767 Captain and have been employed by ABX or one of its predecessor companies since June 13, 1977. I am currently number three on the seniority list of approximately 114 active ABX employees in the 767 Captain position.

2.  I served as the President of the Airline Professionals Association, Teamsters Local Union No. 1224, ("Local 1224" or "the Union") for approximately five years, until December 31, 1999. I currently am the Chair of the Union's Executive Council ("ExCo") for the unit of crewmembers employed at ABX.

3.  The Union (or its predecessor) and the Company have been parties to six collective bargaining agreements beginning in 1983; the most recent one in effect on January 2, 2010, and became amendable on December 31, 2014. I was a member of the Union's Negotiating Committee, actively participating in the negotiations for the 1992 Agreement between the parties and was a

participant on a part-time basis on the Union's Negotiating Committee for the negotiations of the 1997 Agreement. I also served on the Union's Negotiating Committee on a part time basis for the 2010 Agreement and have led the Union's Negotiation Committee in the current negotiations since negotiations with the Company began in early January 2014.

4. I submitted a Declaration to this Court in Case No. 1:16-CV-1039 regarding the Company's unfounded allegations that the Union had engaged in unlawful concerted activity, carefully orchestrated and coordinated to interfere with the Company's operations. All of the assertions made by me in that Declaration are true and are incorporated by reference herein.

5. On October 27, 2016, Lynne Nowel, an attorney representing the Union sent a letter to Robert Boja, ABX Vice- President, Flight Operations, notifying him that the Company had violated its status quo obligations with respect to three (3) issues: (1) The Company was restricting the time period that it would grant Crewmembers the D 6 days that they selected, and would only grant those days at certain times, a violation of the CBA that was clearly not arguably justified under the terms of the CBA; (2) The Company would not make vacation periods available for Crewmembers who were required to cancel their awarded vacation because of upgrade training, and intended to pay the Crewmembers in lieu of their vacation days, another violation that is not arguably justified under the terms of the CBA; and (3) the Company had constructed schedules that violated the clear and unambiguous restrictions of day- night transitions. Mr. Boja did not respond to that letter.

6. Instead, on October 28, 2016 Mr. Boja sent a letter to Captain David Bourne, IBT Airline Division Director and me accusing the Union of having engaged in unlawful actions by "encouraging ABX pilots not to fly open time and not to buy back vacation." The letter also falsely claimed that I had told Mr. Boja that the Union intended to "shut down" the airline unless ABX agreed to certain demands.

7. On October 28, 2016, Mr. Boja also published a Flight Crew Letter advising all Crewmembers that D 6 days would only be awarded to the greatest extent possible and at the same time not create an uncovered trip. This is contrary to the express language of the CBA that states the restored day off selected by the Crewmember shall be granted.

8. On October 31, 2016 I replied to Mr. Boja's letter and denied the irresponsible allegations he had made. I again pointed out that the Company was continuing to violate its status quo obligations with respect to D 6 days and in its refusal to award vacations to certain Crewmembers. The Company then filed an action in this Court seeking a Temporary Restraining Order and an Injunction against the Union. That action was dismissed by this Court.

9. On November 7, 2016, IBT Local 1224 attorney Lynne Nowel sent another letter to Robert Boja again requesting a response to the issues raised in her October 27, 2016 letter. Mr. Boja refused to address those issues or state the Company's position in writing. Instead, he requested a meeting to discuss the issues. Ms. Nowel and Mr. Ed Gleason, an IBT attorney, pointed out that there had been several meetings and phone conferences about the issues, and agreed to meet, but also requested a written response to the letter of October 27, 2016.

10. On November 8, 2016, Mr. Boja claimed that he could not possibly give the Union a fair answer until the parties met because he needed to better understand the issues.

11. The parties agreed to meet on November 18, 2016. I did not attend the meeting but received updates from the participants. On or about November 19, 2016 I called Mr. Boja to further discuss the Company's continued violation of the status quo and discuss proposals to resolve those issues. The discussion lasted less than ten minutes.

12. On November 20, 2016 I received a letter from Mr. Boja whereby he confirmed that the Company would resolve the vacation issue for Crewmembers who had upgraded to Captain. Mr.

3

Boja also stated that the Company would drop the trip that violated the day-night transition restrictions if the parties could not reach an agreement on alternate accommodations to mitigate the fatigue caused by frequent day-night transitions. I repeated the Union's proposal to mitigate the fatigue associated with that particular trip.

13. Mr. Boja also asserted in his letter that I told him that the Union representatives who had attended the meeting on November 18, 2016 lacked the authority to have those discussions. I never said anything even remotely similar to what Mr. Boja claims. I have served as an officer of the Union in one capacity or another for decades and I fully understand the authority of Union representatives, including the authority of the Union President.

14. With respect to the D 6 days, Mr. Boja continued to claim that it was a timing issue. It is not. The language in the CBA is clear; the Company shall grant the restored day off selected by the Crewmember. The confirmation process is merely a ministerial function to insure that the Crew Scheduler knows that the dropped work day needs to be covered. Since 2010, that confirmation was made immediately or certainly very promptly. One timing issue raised shortly after the CBA went into effect arose when the Company requested, and the Union agreed, that Crewmembers must give notice of at least 24 hours of the work day the Crewmember selected to drop.

15. Notwithstanding Mr. Boja's commitment that the Company would offer vacation periods to Crewmembers whose vacations had cancelled, as set forth in his letter of November 20, 2016, I learned on November 21, 2016 that the Company had offered vacation periods to about half of the Crewmembers entitled to a vacation award. Ms. Nowel emailed Mr. Boja about the matter and he requested that she provide him with the names of all affected Crewmembers, presumably because he did not know. To date, I have not received confirmation that the Company has lived up to its commitment regarding the vacation awards.

16. On November 21, 2016, Mr. Boja issued a Flight Crew Letter that rescinded the earlier Flight Crew Letter of October 28, 2016. The Letter advised Crewmembers that they must notify cCrew Scheduling by telephone between five (5) days and twenty-four (24) hours prior to the commencement of a work day that the Crewmember elects to drop. This is the same proposal Mr. Boja had made on October 19, 2016 during a meeting he and other Company representatives attended, along with Ms. Nowel and myself. We had rejected that proposal because it places a restriction on the Crewmember's right to restore his days off, further eroding the Crewmember's ability to actually make plans on his days off.

17. The Union called a strike and the ABX pilots ceased work at approximately 0200 hours (2:00 a.m.) on November 22. The express purpose of this strike was and is to protest the Company's violation of the status quo regarding D6 days, vacation time and day-night transition. Local 1224 has made clear that this is the purpose of the strike; the action is not related to the Union's bargaining position regarding ATI, another subsidiary of ABX's parent company or any other matters. The Union has stated that the strike will end once ABX returns to honoring the contract and the previous status quo. We also have committed to work with the Company to address the staffing problems in the short term but have said that we can and will do so only after ABX restores the status quo.

18. On the morning of November 22, 2016, the first day of the strike, John Starkovich, the ABX Air President, called me and asked that the Union remove the picket line and direct the members to return to work. I declined to do so, and told him that the Company must restore the status quo with respect to D 6 days. He stated that he could not to do so and explained that if the change the Company wanted was not made he may not be able to cover the trips. I again offered to discuss resolutions to covering trips provided the Company first restore the status quo.

19. On November 22, 2016 I had two telephone conversations with John Starkovich. We continued to discuss potential resolutions of the issues, but he continued to insist that he could not restore the status quo with respect to D6 days because the Company may not be able to cover trips.

20. At no time during these discussions with Mr. Starkovich did I condition the Union's proposal on any actions related to ATI or any other contract proposals.

I have read the foregoing declaration and declare under penalty of perjury, under the laws of the United States, that its contents are true and correct to the best of my knowledge.

_____
Richard Ziebarth

11/23/16
_____
Date