UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ABX AIR, INC., | : | Case No. 1:16-cv-1096 |
|     Plaintiff, | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| INTERNATIONAL BROTHERHOOD | : | |
| OF TEAMSTERS, AIRLINE | : | |
| DIVISION, *et al.*, | : | |
|     Defendants. | : | |

**ORDER GRANTING PLAINTIFF'S MOTION
TO CONVERT THE TEMPORARY RESTRAINING ORDER INTO A
PRELIMINARY INJUNCTION (Doc. 14)**

This civil action is before the Court on Plaintiff's motion to convert the temporary restraining order ("TRO") into a preliminary injunction (Doc. 14), and the parties' responsive memoranda (Docs. 21, 22, 24).

## I.   BACKGROUND FACTS[1] AND PROCEDURAL POSTURE

On October 31, 2016, Plaintiff filed a motion for a TRO, claiming that unless the Court enjoined the concerted refusal by ABX's crewmembers to bid on voluntary overtime and to buy back vacations, ABX would experience service failures. (Case No. 1:16cv1039, Doc. 2). Furthermore, Plaintiff argued that the pilots had threatened to strike. (*Id.*) Ultimately, this Court determined that: (1) relying on Defendants' representation that they were not going to strike, the Court could not enjoin the same; and (2) it could not enjoin the pilots from engaging in action permitted by the CBA. (Doc. 16). Specifically, the Court found that it lacked jurisdiction over Plaintiff's claims

---

[1] The facts of this case are recited at length in the Court's prior Orders. (*See* Doc. 13; Case No. 1:16cv1039, Doc. 16).

because the matter represented a "minor dispute" under the RLA that must be addressed through dispute resolution procedures before the System Board of Arbitration. (*Id*.)

Despite additional negotiations following the Court's Order, the parties were unable to reach a resolution, and, on November 22, 2016, at approximately 2:30 a.m., the pilots went on strike. Later that morning, Plaintiff filed another motion for TRO. (Doc. 4). The Court held an evidentiary hearing on November 23, 2016 at 3:30 p.m. Plaintiff presented its affiant, Robert Nicholas Boja, in person under oath who affirmed the truth of his affidavit and the verified complaint and was subject to cross-examination. Defendants presented two witnesses, W. Richard Ziebarth and Douglas Turner, who also presented evidence and were subject to cross-examination. (Doc. 16). Following the evidentiary hearing, the Court issued a TRO prohibiting Defendants' members from "authorizing, causing, engaging in, sanctioning, or assisting in any work stoppage or strike of ABX's operations." (Doc. 13 at 14).[2] ABX posted a bond in the full amount requested by Defendants.

Subsequently, On November 28, 2016, Plaintiff filed a motion for an emergency conference, stating that the pilots were contemplating another work stoppage because they believed the TRO was set to expire after five days pursuant to the Norris-LaGuardia

---

[2] Defendant incorrectly recites the timeline for the issuance of the TRO. After the Court held an evidentiary hearing at 3:30 p.m. on November 23, 2016 (the day before Thanksgiving), the Court orally granted the TRO at 4:50 p.m. (Doc. 16 at 65). At 6:00 p.m. that same evening, the Court issued a written TRO (Doc. 13), followed by a minute entry at 6:15 p.m., reflecting the same.

Act (the "NLGA").[3] (Doc. 14). Plaintiff also requested that the TRO be converted into a preliminary injunction. (*Id.*)

On November 28, 2016, the Court held a telephone conference to address Plaintiff's request for emergency relief. The Court orally rejected Defendants' argument that the TRO expired in 5 days and held that the TRO remained in effect through December 7, 2016 and that it could be extended for up to an additional fourteen days, through December 21, 2016, upon "good cause shown." (Doc. 18). The Court's oral ruling was followed by a Supplemental Order confirming the same. (Doc. 17).

## II. STANDARD OF REVIEW

"The Sixth Circuit has explained that 'the purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had.'" *Reid v. Hood*, No. 1:10 CV 2842, 2011 U.S. Dist. LEXIS 7631, at *2 (N.D. Ohio Jan. 26, 2011) (citing *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996)). "The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *Id.* (citing *Motor Vehicle Bd. of Calif. v. Fox*, 434 U.S. 1345, 1347 n.2 (1977)).

Plaintiff bears the heavy burden of demonstrating his entitlement to a TRO. An "injunction is an extraordinary remedy which should be granted only if the movant

---

[3] Defendants take issue with the fact that the Court did not articulate when the TRO would expire. However, Rule 65(b)(2) clearly states that a TRO "expires at the time after entry — not to exceed 14 days." The Court clarified the expiration date in its Supplemental Order. (*See* Doc. 17).

3

carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002).

In determining whether to grant injunctive relief, this Court must weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Id.* These four considerations are factors to be balanced, not prerequisites that must be met. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000).

### III.  ANALYSIS

#### A.  Whether the TRO was Properly Granted

First, Defendants argue that the TRO was improvidently granted and should be dissolved.

For minor disputes, "Congress intended the grievance procedures [of the RLA] to be a compulsory substitute for economic self-help, not merely a voluntary alternative to it." *Bhd. of Locomotive Eng'rs v. Louisville & N.R. Co.*, 373 U.S. 33, 39 (1963). To protect and give effect to the RLA's grievance procedures, "courts may enjoin threatened strikes arising out of minor disputes…notwithstanding that the Norris-LaGuardia Act normally prohibits federal courts from issuing injunctions against strikes in labor

4

disputes." *Gen. Comm. of the Adjustment, United Transp. Union v. CSX R.R. Corp.*, 893 F.2d 584, 595 (3rd Cir. 1990). Permitting strikes over minor disputes "would make the minor dispute resolution procedures under the RLA ineffective and frustrate the statute's purpose of avoiding strikes and instead resolving minor disputes through binding arbitration." *Id.*[4] As explained by the court in *Pan American World Airways, Inc. v. Flight Engineers' International Association PAA Chapter, AFL-CIO*, 306 F.2d 840 (2d Cir. 1962):

> Railway Labor Act was designed to provide comprehensive treatment for disputes arising in the industries which are subject to the Act. With the provisions for the settlement of "minor" disputes, i.e. those arising out of the interpretation and application of existing collective agreements, we need here have no concern. Suffice it to say that the Act provides for such disputes a system of compulsory adjustment without resort to strike, and that strikes over "minor" disputes are enjoinable without regard to the limitations of the Norris-La Guardia Act. Brotherhood of Ry. Trainmen v. Chicago River & I.R.R., 353 U.S. 30, 77 (1957).

*Id.* at 845.

This Court has already concluded that this is a minor dispute because it arises out of the interpretation of an existing CBA and ABX has not changed the terms of the CBA.[5] (Doc. 13 at 9). Accordingly, the NLGA does not apply to this dispute.

---

[4] *See also Virginian R.R. Co. v. Sys. Fed'n*, 300 U.S. 515, 563 (1937) (the provisions of the RLA permitting injunctive relief "cannot be rendered nugatory by the earlier and more general provision of the Norris-LaGuardia Act.").

[5] *See, e g., Hawaiian Airlines v. Norris*, 512 U.S. 246, 252-54 (1994) ("Minor disputes grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions. Minor disputes involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation[,]…develop from the interpretation and/or application of the contracts between the labor unions and carriers…[and] pertain[] only to disputes invoking contract-based rights).

5

### *1. Notice*

First, Defendants argue that NLGA Section 7's notice requirements were not satisfied, because notice was not afforded to the "chief of those public officials of the county and city within which the unlawful acts have been threatened or committed charged with the duty to protect complainant's property[.]" 29 U.S.C. § 107(e).

The Court did not provide notice of the TRO hearing to any public officials in Wilmington, Ohio, where ABX is headquartered. However, given the facts and circumstances in this case, providing notice to public officials in Wilmington would have been nonsensical. There are no allegations that the pilots threatened to destroy Plaintiff's property. Defendants fail to cite any authority where, in an analogous factual situation, a court was subject to the requirements of Section 107(e). Section 107(e) only applies to cases where there is a threat of physical violence. *See, e.g., Illinois Cent. R.R. Co. v. Bhd. of Maint. of Way Employees Div. of Int'l Bhd. of Teamsters*, 79 F. Supp. 3d 846, 853-54 (N.D. Ill. 2015) (Section 107(e) was "inapplicable to th[e] case," which did not involve a threat of physical violence, and granting application for injunctive relief without requiring notice to any public officials).

### *2. Irreparable Injury to ABX*

Next, Defendants argue that the Court did not comply with NGLA Section 7's requirements, because it failed to make any relevant findings pertaining to substantial and irreparable injury to ABX's property. *See* 29 U.S.C. § 107(b). This is yet another example of why the NLGA does not apply to this case. The NLGA certainly could not have intended to preclude a party from seeking relief from other types of irreparable

harm.  This Court has repeatedly held that loss of business goodwill constitutes irreparable harm.  *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992).[6]

As of day one of the strike, Defendants' actions caused the cancellation of at least 26 flights for at least four customers carrying approximately 1.25 million pounds of cargo and damaged goodwill with its customers.  (Doc. 1 at ¶¶ 68, 70).  Since there is no way to calculate the loss of customer goodwill and damage to reputation, Plaintiff has evidenced irreparable harm.

### 3.  Harm to the Union

Finally, Defendants take issue with the fact that "the Court made only a cursory reference to the harm to the Union….and …the harm to the pilots."  (Doc. 21 at 5).  Defendants argue that "[h]aving conducted a very abbreviated hearing that limited Defendants to forty-five minutes of testimony, Defendants were limited in the amount of evidence it could provide and therefore the Court was not in a position to determine the harm to the Union and to the pilots."  (*Id*.)

There were three discrete issues before the Court at the TRO hearing.  Specifically, the Court was required to determine whether ABX Air had violated the status quo with respect to: (1) D6 days; (2) day-night transition flying rules; and (3) vacation time.

---

[6] *See also Langley v. Prudential Mortg. Capital Co., LLC*, 554 F.3d 647, 649 (6th Cir. 2009) (the Sixth Circuit has "recognized that a loss of business goodwill may constitute irreparable harm because of the difficulty in calculating damages.").

7

First, with respect to the D6 days Defendants argue that Plaintiff disrupted the status quo when it required pilots to report D6 days five days in advance. However, a November 21, 2016 memorandum to crewmembers states that crewmembers must give "*between* five days and *24 hours*" notice. (Doc. 1-4) (emphasis added). First Officer Douglas Turner expressly admitted during the hearing that Plaintiff awarded D6 days as long as they gave 24 hours notice. (Doc. 16 at 49). Defendants did not present any evidence that pilots are currently required to give five days notice for D6 days. Accordingly, there is no evidence that Plaintiff is violating the status quo with respect to D6 days.

Second, with respect to day-night transition flying rules, Defendants allege that the Rockford flight violated the CBA's day/night transition restrictions. However, Captain Ziebarth testified that if ABX dropped the Rockford flight "we're done with the issue." (Doc. 16 at 29).[7] Captain Ziebarth went on to testify that "[t]here are other trips that have day-night issues, but we've granted waivers on them." (*Id.* at 30). Accordingly, there is no evidence that Plaintiff is violating the status quo with respect to day-night transitions.

Third, with respect to vacation time, Defendants allege that Plaintiff improperly rescinded pilots' vacation time. However, First Officer Douglas Turner expressly admitted during the hearing that the company asked for the names of the pilots whose vacation time had improperly been rescinded and that ABX was "in the process of [restoring their vacation time] right now" and that the process was "[t]hree-quarters done.

---

[7] As of at least December 6, 2016, ABX no longer files the Rockford trip. (Doc. 22-1 at ¶ 12).

8

(Doc. 16 at 39).[8] Accordingly, there is no evidence that Plaintiff is violating the status quo with respect to the vacation time.

Given the pilots' testimony, there is no amount of additional evidence that could change the fact that ABX Air is not violating the status quo with respect to these discrete disputes. Moreover, Defendants have not argued that there are any additional facts or evidence that would change the analysis.

As this Court previously articulated in its November 7, 2016 Order, it is clear, based on the fact that "[b]y the end of June 2016, 59 percent of Captains and 48 percent of First Officers had reached or exceeded the six-day limit on emergency assignments," that pilots were and may still continue to be harmed by ABX. (Case No. 1:16cv1039, Doc. 16 at 5). However, when considering the three minor disputes before the Court (D6 days, day-night transitions, and vacation time), there is no evidence that ABX is disrupting the status quo.

Accordingly, the Court finds that the TRO was properly issued and will not be dissolved.

### B. Extension of TRO and/or Converting the TRO into a Preliminary Injunction

Defendants argue that even if the TRO is valid, there is no good cause permitting

---

[8] As of at least December 6, 2016, ABX awarded all vacation period to captains who upgraded from first officer. (Doc. 22-1 at ¶ 11).

it to be extended for an additional period of up to 14 days.[9] Specifically, Defendants claim that Plaintiff intends to prolong the dispute to leverage the current litigation with the threat of a preliminary or permanent injunction and contempt proceeding in order to secure concessions from the Union and its pilots during negotiations/mediation for an amended collective bargaining agreement. Accordingly, Defendants maintain that Plaintiff's actions belie any assertion that good cause exits to extend it. Plaintiff contests Defendants' representations and maintains that it provided Defendants with a revised settlement proposal at 9:45 a.m. on December 6, 2016, in an effort to resolve the dispute. (Doc. 22-1 at ¶ 8).

"The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction." *Reid v. Hood*, 1:10cv2842, 2011 U.S. Dist. LEXIS 7631, at *2 (N.D. Ohio Jan. 26, 2011). When the opposing party is on notice, "the linguistic difference" between a TRO and a preliminary injunction "is largely academic as the same factors apply to both." *Walnut Private Equity Fund, L.P. v. Argo Tea, Inc.*, No. 1:11cv770, 2011 U.S. Dist. LEXIS 138884, at *26 (S.D. Ohio Dec. 2, 2011). Defendants fail to allege any material fact suggesting that, if a hearing were held, this Court would reach a different outcome. Nothing has occurred to alter the analysis in the Court's original TRO, and since this Court has already complied with the requirements for the issuance of a preliminary injunction, it can simply convert the nature of its existing

---

[9] Rule 65 of the Federal Rules of Civil Procedure provides that a TRO "expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record." Fed. R. Civ. P. 65(b)(2).

10

Order.  Accordingly, the Court adopts and incorporates herein the findings and conclusions contained in that Order.  (*See* Doc. 13).[10]

The Court's conversion of the TRO into a preliminary injunction is not a "cudgel to secure [ABX] unfair bargaining leverage over the Union and its pilots."  (Doc. 21 at 8).  The TRO simply reaffirms that there is no evidence that ABX is currently violating the status quo with respect to the three discrete issues addressed in this case and therefore prevents the pilots from striking with respect thereto.  The preliminary injunction is not something for Plaintiff "to hide behind…to avoid having to resolve a dispute and a staffing crisis."  The preliminary injunction does not give ABX any leverage or power with respect to resolving these and/or any other disputes between the parties; it simply reaffirms that the pilots cannot strike with respect to the three minor disputes discussed herein.[11]  As this Court has said *ad nauseam* since November 7, 2016 (Case No. 1:16cv1039, Doc. 16), the parties need to focus their time and resources on arbitrating their disputes instead of litigating in this forum.

## IV.  CONCLUSION

Accordingly, for these reasons, Plaintiff's motion to convert the TRO into a preliminary injunction (Doc. 14) is **GRANTED**.  As articulated in the Order granting the

---

[10] *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996) (the decision to issue a preliminary injunction lies within the sound discretion of the district court).

[11] Alternatively, Plaintiff requests that the Court convert the TRO into a permanent injunction.  The standard for a permanent injunction is essentially the same as that for a preliminary injunction except that a plaintiff must prove actual success on the merits rather than a likelihood of success on the merits.  *ACLU of Ky. v. McCreary Cty.*, 607 F.3d 439, 445 (6th Cir. 2010).  Although Plaintiff makes a compelling case to convert the TRO into a permanent injunction, the Court declines to issue a permanent injunction until Plaintiff is given one final chance to be heard on the merits.

TRO, Defendants and its members are prohibited from authorizing, causing, engaging in, sanctioning, or assisting in any work stoppage or strike of ABX's operations.  (*See* Doc. 13).

Counsel shall meet and confer and jointly email the Court (black_chambers@ohsd.uscourts.gov) by December 9, 2016 with a proposed calendar for the adjudication of a permanent injunction.

**IT IS SO ORDERED**.

Date:  12/7/2016  __/s/Timothy S. Black_____
Timothy S. Black
United States District Judge